Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/03/2017 09:08 AM CST

STATE OF NEBRASKA, APPELLEE, V.
LEODAN ALARCON-CHAVEZ, APPELLANT.

___ N.W.2d ___

Filed March 3, 2017.    No. S-16-456.

1. **Postconviction: Evidence.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact.

2. **Postconviction: Evidence: Appeal and Error.** An appellate court upholds the trial court's findings in an evidentiary hearing on a motion for postconviction relief unless the findings are clearly erroneous. An appellate court independently resolves questions of law.

3. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.

4. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

5. **Postconviction: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.

6. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.

7. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.

8. **Effectiveness of Counsel: Proof: Appeal and Error.** In a nonplea context, to establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must show a reasonable probability that the result would have been different had counsel not performed deficiently.

9. ____: ____: ____. The two prongs of the test governing a claim of ineffective assistance of counsel, deficient performance and prejudice, may be addressed in either order.

10. **Effectiveness of Counsel: Presumptions.** The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable.

11. **Trial: Attorneys at Law: Effectiveness of Counsel: Appeal and Error.** When reviewing claims of ineffective assistance, an appellate court will not second-guess a trial counsel's reasonable strategic decisions. And an appellate court must assess the trial counsel's performance from the counsel's perspective when the counsel provided the assistance.

12. **Effectiveness of Counsel: Appeal and Error.** In addressing the prejudice component of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court focuses on whether a trial counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.

13. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice as a result of ineffective assistance of counsel, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

14. **Rules of the Supreme Court: Trial: Records.** Although court rules require transcription of voir dire examination and of opening and closing statements of parties when requested by counsel, any party, or court, recordation of those parts of trial is not made mandatory by the rules, and failure to require recordation cannot be said, ipso facto, to constitute negligence or inadequacy of counsel.

15. **Effectiveness of Counsel: Pleas: Proof.** The right to effective assistance of counsel extends to the negotiation of a plea bargain, and claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

16. **Postconviction: Evidence: Witnesses.** In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony.

17. **Trial: Effectiveness of Counsel: Witnesses.** The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy,

even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel.

18. **Attorneys at Law: Effectiveness of Counsel.** A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

19. **Trial: Effectiveness of Counsel: Evidence.** A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.

20. **Effectiveness of Counsel: Proof.** In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

21. **Judgments: Appeal and Error.** When the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm.

22. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal.

Appeal from the District Court for Madison County: Mark A. Johnson, Judge. Affirmed.

Martin V. Klein, of Carney Law, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Stacy, J.

Leodan Alarcon-Chavez appeals from an order of the district court for Madison County denying his motion for postconviction relief after an evidentiary hearing. Finding no error, we affirm.

## I. FACTS

In 2011, Alarcon-Chavez was charged with first degree murder, use of a deadly weapon to commit a felony, and tampering with a witness in connection with the stabbing death of

Maria Villarreal. The following factual summary is taken from our prior opinion in *State v. Alarcon-Chavez*.[1]

### Events Prior to Stabbing

Alarcon-Chavez and Villarreal began dating and moved into an apartment together in January 2009. Alarcon-Chavez was the sole leaseholder for their apartment, which was located in Norfolk, Nebraska. Their relationship ended after Alarcon-Chavez informed Villarreal that he was seeing another woman. After the breakup, Villarreal stayed in the apartment and Alarcon-Chavez moved in with a friend. While he was living with his friend, Villarreal called to threaten him on several occasions. Once, she told him that her boyfriend would "adjust accounts" with him.

On two occasions when he knew Villarreal would not be present, Alarcon-Chavez went back to the apartment he had shared with Villarreal. One time, he noticed another man's clothes.

In late February 2010, Villarreal began dating Aniel Campo Pino, and he moved into the apartment with Villarreal and her 3-year-old son.

On March 9, 2010, Alarcon-Chavez saw Villarreal and Pino at a store. Alarcon-Chavez returned to his friend's house around 7 p.m. and began consuming alcohol. Around 11 p.m., he drove across town to Wal-Mart to purchase more beer. While at Wal-Mart, Alarcon-Chavez saw a set of Sunbeam knives, and he testified he decided to purchase them for cooking purposes. He purchased the knives and beer just after 11:30 p.m. He returned to his friend's house and took the beer inside, but left the knife set in the vehicle.

Alarcon-Chavez knew Villarreal went to work early in the morning. So, around 5 a.m. on March 10, 2010, he drove to the apartment where Villarreal was living. He testified that he intended to tell Villarreal and Pino to get

---

[1] *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012).

out of his apartment. He explained he did not want to live with his friend anymore because he had been sleeping on the floor and using clothes for a pillow.

### Stabbing

Alarcon-Chavez arrived at the apartment around 5:10 or 5:20 a.m. He initially got out of the vehicle, but then, after remembering Villarreal's threat that Pino would "adjust accounts" with him, reentered it. Alarcon-Chavez then remembered the knife set, so he opened the package with his teeth and concealed one of the knives on his body.

Alarcon-Chavez entered the apartment and found Villarreal in the kitchen making her lunch. She had a knife in her hand. Villarreal came toward Alarcon-Chavez and grabbed his body and somehow dropped the knife. She was holding Alarcon-Chavez and yelling for the police and for Pino, and Alarcon-Chavez was struggling to escape her grip. Fearing that Pino would attack him, he drew the knife he had concealed on his body. Alarcon-Chavez and Villarreal continued to struggle, and as he tried to get loose, he stabbed Villarreal in the abdomen. Alarcon-Chavez did not remember stabbing her anywhere else. After the stabbing, Villarreal sat on the floor and leaned back onto the carpet. Alarcon-Chavez then heard someone coming and locked the door.

Pino had gone outside before Alarcon-Chavez arrived. He went back to the apartment after he heard Villarreal scream. When he arrived, the door was locked. Villarreal was screaming that he should not come in because a man was stabbing her. Pino told Alarcon-Chavez to come out of the apartment so he could help Villarreal, but Alarcon-Chavez did not respond. . . . Pino heard Villarreal saying, "Leo, don't kill me, Leo, don't kill me." Alarcon-Chavez then told Villarreal he was going to kill her and said, "I told you not to leave me because if you did this was going to happen to you." Pino told a neighbor to call the police and then retrieved a friend.

Police officers were dispatched to the apartment. One officer knocked at 6:06 a.m. and tried unsuccessfully to open the door. An officer standing outside of the apartment activated a tape recorder. Villarreal can be heard on the recording pleading for help. She told Alarcon-Chavez to go away and not to kill her. She said that she had been stabbed five times and that Alarcon-Chavez was still in the apartment with her. The recording also revealed numerous expressions of pain from Villarreal, several of which occurred just before the officers entered the apartment. Alarcon-Chavez testified that Villarreal was not asking him not to kill her, but, rather, was begging him not to kill himself.

When another officer arrived, he knocked and announced his presence and tried to open the door. Either Pino or his friend told the officers they needed to get inside. The officers entered the apartment by kicking the door several times. When the officers opened the door, they observed Alarcon-Chavez standing over Villarreal's body with a knife in each hand. Alarcon-Chavez was shot with an electric stun gun and handcuffed. He was covered in blood. As Alarcon-Chavez was being taken out of the apartment, Pino's friend asked him "why [he] didn't do this to [Pino and his friend]," and he responded that "he didn't want to do any harm to [them], the problem wasn't with [them]."

Although she was obviously in pain, Villarreal was alert, coherent, and talking when the officers first entered the apartment. Within a few minutes, her color turned to an ash gray and she stopped speaking. There was a large amount of blood around her. She died as a result of multiple stab wounds.[2]

Following a jury trial, Alarcon-Chavez was convicted of first degree murder, use of a deadly weapon to commit a felony,

---

[2] *Id.* at 323-26, 821 N.W.2d at 361-63.

and tampering with a witness. We affirmed his convictions on direct appeal.[3]

Alarcon-Chavez then filed a motion for postconviction relief. The district court appointed new counsel to represent Alarcon-Chavez in the postconviction matter. Alarcon-Chavez was granted leave to amend his postconviction motion several times, and an evidentiary hearing was held on all issues set forth in his fourth amended motion for postconviction relief. In a written order entered April 6, 2016, the district court denied postconviction relief on all grounds. Alarcon-Chavez timely appeals.

## II. ASSIGNMENTS OF ERROR

Alarcon-Chavez assigns, restated and summarized, that the district court erred by not finding trial counsel was constitutionally ineffective for failing to (1) "verify, ensure and or preserve" a record was made of voir dire, (2) raise a challenge under *Batson v. Kentucky*[4] when the State struck a Hispanic juror from the venire, (3) communicate plea offers, (4) speak with witnesses before trial, (5) advise Alarcon-Chavez of his right to independently test DNA, (6) advise Alarcon-Chavez of his right to depose the State's expert witnesses, and (7) object during trial to the State's questioning of key witnesses and offers of exhibits. He also assigns that the court erred in not finding his constitutional rights were violated because he was unable to understand one of the court interpreters during trial.

## III. STANDARD OF REVIEW

[1,2] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact.[5] An appellate

---

[3] *State v. Alarcon-Chavez, supra* note 1.

[4] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[5] *State v. Poe*, 292 Neb. 60, 870 N.W.2d 779 (2015).

court upholds the trial court's findings unless they are clearly erroneous.[6] In contrast, an appellate court independently resolves questions of law.[7]

[3,4] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.[8] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[9] an appellate court reviews such legal determinations independently of the lower court's decision.[10]

[5,6] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.[11] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.[12]

## IV. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Alarcon-Chavez was represented by the same three attorneys at trial and on direct appeal. As such, this postconviction proceeding is his first opportunity to assert that his attorneys were ineffective.[13]

[7-11] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the

---

[6] *Id.*

[7] *State v. Harris*, 294 Neb. 766, 884 N.W.2d 710 (2016).

[8] *State v. Branch*, 290 Neb. 523, 860 N.W.2d 712 (2015).

[9] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[10] *State v. Branch, supra* note 8.

[11] *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

[12] *Id.*

[13] See *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000).

defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[14] In a nonplea context, the defendant must show a reasonable probability that the result would have been different had counsel not performed deficiently.[15] The two prongs of this test, deficient performance and prejudice, may be addressed in either order.[16] The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable.[17] When reviewing claims of ineffective assistance, an appellate court will not second-guess trial counsel's reasonable strategic decisions. And we must assess trial counsel's performance from the counsel's perspective when the counsel provided the assistance.[18]

[12,13] In addressing the prejudice component of the *Strickland* test, we focus on whether a trial counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.[19] To show prejudice, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[20]

### (a) Failure to Record Voir Dire

At trial, the voir dire proceedings were not recorded, except when the State asked to make a brief record of its reasons

---

[14] *State v. Branch, supra* note 8.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[19] *Id.*

[20] *Id.*

for striking a particular juror. Alarcon-Chavez alleged his counsel was ineffective for failing to ensure that voir dire was recorded. He further alleged that he did not waive the right to record voir dire.

At the evidentiary hearing, one of Alarcon-Chavez' attorneys testified that he explained the voir dire process to Alarcon-Chavez, including what would happen when the jury came in, the number of strikes per side, when a strike for cause could be made, and when peremptory strikes could be used. This defense attorney did not remember if there was any conversation about whether to record voir dire, or whether Alarcon-Chavez specifically waived the recording of voir dire.

[14] In its order denying postconviction relief, the district court noted there was no evidence that any party, or the court, requested voir dire be recorded. It then quoted from *State v. Jones*,[21] a case in which we held our court rules require the transcription of voir dire only "when requested by counsel, any party, or the court." In *Jones*, we reasoned that because recording voir dire is not made mandatory by the court rules, "the failure to require recordation cannot be said, ipso facto, to constitute negligence or inadequacy of counsel."[22]

Neb. Ct. R. § 2-105(A)(2) (rev. 2010) states:

> Upon the request of the court or of any party, either through counsel or pro se, the court reporting personnel shall make or have made a verbatim record of anything and everything said or done by anyone in the course of trial or any other proceeding, including, but not limited to . . . the voir dire examination . . . .

Neither *Jones* nor § 2-105(A)(2) provide that a verbatim record of voir dire is mandatory. On this record, we agree with the district court that Alarcon-Chavez failed to prove his trial counsels' performance was deficient, and he failed to prove any prejudice from the fact that voir dire was not recorded. The trial court correctly denied relief on this claim.

---

[21] *State v. Jones*, 246 Neb. 673, 675, 522 N.W.2d 414, 415 (1994).

[22] *Id*. at 675, 522 N.W.2d at 415-16.

### (b) Failure to Raise *Batson* Challenge

Alarcon-Chavez asserts his trial attorneys were ineffective for failing to raise a *Batson*[23] challenge after the State used a peremptory strike to remove a Hispanic juror from the panel. In striking the juror, the State voluntarily made a record of its reason for the strike even though no *Batson* challenge had been raised by Alarcon-Chavez.

During the evidentiary hearing, one of Alarcon-Chavez' trial attorneys testified he did not raise a *Batson* challenge because he, too, wanted the juror removed from the panel. Trial counsel explained that the juror was a criminal justice major who commented that it would be "an honor" to serve as a juror. Trial counsel thought the juror's comment suggested he was someone who wanted to be on the jury in order to return a conviction. Trial counsel testified that if the State had not used one of its peremptory strikes on that juror, he would have done so.

When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.[24] Defense counsel's strategic decision not to raise a *Batson* challenge was reasonable and does not support a finding of ineffectiveness.

### (c) Failure to Disclose Plea Offer

[15] Alarcon-Chavez asserts his attorneys were ineffective for failing to timely communicate a plea offer. The U.S. Supreme Court has established that the right to effective assistance of counsel extends to the negotiation of a plea bargain.[25] And claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*.[26]

---

[23] See *Batson v. Kentucky, supra* note 4.

[24] *State v. Branch, supra* note 8.

[25] See *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).

[26] See *id*.

According to Alarcon-Chavez, the State offered a plea deal which his attorneys did not convey to him until the night before trial. Alarcon-Chavez testified that he accepted the offer once conveyed, but when his attorneys communicated his acceptance to the State the next morning, the plea offer had been withdrawn.

At the evidentiary hearing, one of Alarcon-Chavez' trial attorneys testified he met with Alarcon-Chavez the night before trial and told him that they were looking at a very difficult case to win based on self-defense and that Alarcon-Chavez likely would be convicted. Trial counsel testified he told Alarcon-Chavez it might be advantageous to try and get a last-minute plea agreement for something that did not carry a mandatory life sentence. Trial counsel asked Alarcon-Chavez whether he would be willing to plead to second degree murder, use of a weapon, witness tampering, and making terroristic threats. According to trial counsel, Alarcon-Chavez agreed and authorized him to contact the State. Trial counsel contacted the prosecutor directly after this conversation with Alarcon-Chavez and communicated the plea offer. The prosecutor refused the plea offer and would not make a counter offer. Trial counsel relayed this information to Alarcon-Chavez the next morning. Trial counsel's version of events was confirmed by another of Alarcon-Chavez' trial attorneys, who testified in addition that she had approached the prosecution on several occasions during the pendency of the case requesting a plea offer, but each time, the prosecutor had refused.

[16] In its order, the court made factual findings consistent with the testimony of Alarcon-Chavez' trial attorneys, and the court concluded Alarcon-Chavez failed to prove his attorneys were ineffective for failing to timely communicate plea offers. In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony.[27] We find no

---

[27] *State v. Branch, supra* note 8.

clear error in the district court's factual findings, and we agree that Alarcon-Chavez failed to prove his trial attorneys were ineffective for failing to communicate plea offers.

### (d) Failure to Speak With Witnesses

At his first meeting with defense counsel, Alarcon-Chavez provided counsel the names of four witnesses he wanted to testify on his behalf. Alarcon-Chavez claims all four witnesses would have testified about the victim's threatening and blackmailing him and would have supported his claim of self-defense. Alarcon-Chavez claims his attorneys were ineffective, because they failed to contact or call these witnesses at trial.

At the evidentiary hearing, Alarcon-Chavez' attorneys testified that only one of the potential witnesses could be located. With respect to that witness, defense counsel concluded that based on the witness' reports to police, he would not have been a helpful witness. Additionally, after meeting with that witness, Alarcon-Chavez' counsel concluded he was unhelpful and bordering on hostile.

Counsel further testified, with respect to all four witnesses identified by Alarcon-Chavez:

> All of this information from these witnesses, if it came out, and I believed it would have — would not have helped [Alarcon-Chavez'] case. It would have shown that there was a prior relationship that involved threats and violence against each other, and that's the last thing I wanted the jury to hear was prior incidents of violent behavior toward this victim.

In its order, the district court made findings consistent with the testimony of Alarcon-Chavez' trial attorneys and concluded Alarcon-Chavez had failed to meet his burden of proof on this claim of ineffective assistance of counsel. We find no clear error in the trial courts findings, and we agree with its conclusion.

[17-19] The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a

finding of ineffectiveness of counsel.[28] A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.[29] A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. We do not second-guess strategic decisions made by trial counsel, so long as those decisions are reasonable.[30] Here, trial counsels' decision not to pursue or call the four witnesses was reasonable, and counsel did not perform deficiently.

### (e) Independent DNA Testing

Alarcon-Chavez argues his trial attorneys were ineffective for failing to independently test DNA evidence and for failing to advise him of his right to have DNA testing done. When asked what DNA evidence Alarcon-Chavez wanted his lawyers to find, Alarcon-Chavez responded:

> Well, I don't know how to explain it. Before [the prosecution] said that I was the only one in the apartment, true, and I testified that I was the one that stabbed her. So what I think is [my lawyers] should have informed me about the [sic] not doing the DNA test.

At the evidentiary hearing, one of Alarcon-Chavez' trial attorneys testified that he did not think DNA testing would have been helpful to the defense. Police officers found Alarcon-Chavez standing over the victim and holding two knives, and Alarcon-Chavez did not deny stabbing the victim. The issue at trial was not the identity of the perpetrator, but whether Alarcon-Chavez had acted in self-defense.

The district court found there was no merit to the claim that counsel were ineffective for failing to pursue independent testing of the DNA evidence, reasoning:

---

[28] *State v. Thomas*, 278 Neb. 248, 769 N.W.2d 357 (2009).

[29] *State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989).

[30] *State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005).

[Alarcon-Chavez'] former attorney testified that DNA analysis of the knife used would not have furthered [his] case. [Alarcon-Chavez] wanted to raise the affirmative defense of self-defense; therefore, no issue of identity existed. The evidence also revealed when the officers entered the apartment there were only two people present, the victim and [Alarcon-Chavez].

We find no error in the district court's findings on this issue. Defense counsels' decision not to conduct independent DNA testing was reasonable under the circumstances, and counsel did not perform deficiently for failing to independently test DNA evidence. Nor has Alarcon-Chavez shown any prejudice from counsels' failure to advise him of the right to have DNA testing done.

### (f) Failure to Depose State's Expert Witnesses

Alarcon-Chavez asserts his defense attorneys were ineffective for failing to depose the State's expert witnesses. Neither his postconviction motion nor his briefing to this court identifies which expert witnesses his attorneys should have deposed, or what such depositions might have revealed.

One of Alarcon-Chavez' trial attorneys testified that after reviewing all the police reports, medical reports, hospital records, autopsy records, and the depositions of the police officers involved, he did not see a need to depose anyone else. The district court concluded Alarcon-Chavez failed to prove any prejudice as a result of his attorneys' not deposing the State's experts and found this claim of ineffective assistance to be without merit. It noted evidence showing that Alarcon-Chavez' trial attorneys hired an independent physician to review the State's pathologist's report and opinion, and the independent physician agreed with the State's expert's opinion regarding the cause and manner of death.

[20] In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been

different.[31] We agree with the district court's determination
that Alarcon-Chavez failed to establish prejudice as a result
of defense counsel's failure to depose the State's experts. We
therefore reject this claim of ineffective assistance of counsel.

### (g) Failure to Object at Trial

Alarcon-Chavez claims his trial attorneys were ineffective
due to their "failure to object to the State's questioning of key
witnesses and offers of exhibits during the Trial." In his appel-
late brief, Alarcon-Chavez identifies the following instances
where his counsel failed to object:

> During testimony of . . . Pino on direct examination
> by the Madison County Attorney, he testified to what
> Manuel Montalvo was saying to [Alarcon-Chavez],
> which was clearly hearsay. There was no objection made
> by the counsel for [Alarcon-Chavez]. . . . In addition,
> counsel for [Alarcon-Chavez] did not object to "Exhibit
> 9" . . . which was a picture of the victim lying on the
> floor. . . . At another time, . . . Pino was questioned about
> and testified to what the victim told him about her wound
> and when she received the same, and there was no objec-
> tion by counsel for [Alarcon-Chavez]. . . . In another
> incident during his testimony, there were multiple ques-
> tions about what the victim said to . . . Pino while she
> was laying [sic] on the floor after the police arrived, and
> there were no objections to any of those questions. . . .
> He testified to what he saw when he entered the apart-
> ment and discussed there being a child present in the
> apartment without objection. . . . Pino testified he saw
> [Alarcon-Chavez] holding the knives, but was lead [sic]
> into the question by the County Attorney asking "and did
> you see the knives?"[32]

The district court concluded Alarcon-Chavez failed to show
how any of the questions or exhibits were objectionable or

---

[31] See *State v. Benzel*, 269 Neb. 1, 689 N.W.2d 852 (2004).

[32] Brief for appellant at 22-23.

how he was prejudiced by the admission of the evidence. The court also found that although Alarcon-Chavez argued the cumulative effect of these failures amounted to ineffective assistance, "[n]o proof was made as to what cumulative effect these alleged failures may have had upon the jury." The court found no merit to this claim of ineffective assistance.

We agree with the district court's determination that Alarcon-Chavez failed to show prejudice from counsel's alleged deficient performance. We therefore conclude this assignment of error is meritless.

### 2. Problem Understanding Interpreters

Alarcon-Chavez speaks Spanish, and court interpreters were used during pretrial and trial proceedings. Alarcon-Chavez claims he had trouble understanding one of the two court interpreters, and consequently, "he could not assist in his own defense, there by [sic] denying his right to due process and violating his constitutional rights."[33]

We have held that a defendant's inability to comprehend criminal proceedings or communicate in English at such proceedings can result in a violation of the defendant's due process and Sixth Amendment rights.[34] Neb. Rev. Stat. § 25-2401 (Reissue 2016) provides that it is

> the policy of this state that the constitutional rights of persons unable to communicate the English language cannot be fully protected unless interpreters are available to assist such persons in legal proceedings. It is the intent of sections 25-2401 to 25-2407 to provide a procedure for the appointment of such interpreters to avoid injustice and to assist such persons in their own defense.

At the evidentiary hearing, Alarcon-Chavez testified that he is of Cuban descent. He testified that Cubans have a different dialect than other Spanish speakers, and that some

---

[33] *Id.* at 24.

[34] See *State v. Bol*, 294 Neb. 248, 882 N.W.2d 674 (2016).

Spanish words have a different meaning in Cuba than they do in Mexico. Alarcon-Chavez also testified that on the first day of trial, he told one of his attorneys that he could not understand one of the interpreters, who he described as having a voice that "was very thick." Alarcon-Chavez testified that his attorney told the judge about the situation, but the judge said the interpreter would have to continue, because there were no other interpreters assigned to the case. The record contains no such discussion.

Alarcon-Chavez' trial attorney denied there was a hearing before the judge at which Alarcon-Chavez expressed displeasure with the interpreter. But trial counsel confirmed that at some point during the trial, Alarcon-Chavez mentioned to counsel that he was having trouble understanding one of the interpreters due to the interpreter's accent. According to trial counsel, he asked Alarcon-Chavez whether he generally understood what was happening and Alarcon-Chavez replied that he "was just having difficulty because of the accent and the kind of mumbling . . . but he said he generally understood what was going on." Trial counsel testified that he could not recall for certain, but thought he may have asked the interpreter to enunciate better. Additionally, trial counsel testified that each day after court, he met with Alarcon-Chavez using his own interpreter to make sure Alarcon-Chavez understood what was happening; Alarcon-Chavez never mentioned being unable to understand the proceedings.

The interpreter also testified. He has interpreted for the courts since 1991 and has been a certified court reporter since 2003. He has interpreted for Cuban clients and has never had difficulty speaking with them in Spanish. According to the interpreter, he had interpreted for Alarcon-Chavez before the murder trial and had no difficulty conversing with Alarcon-Chavez during the murder trial. The same interpreter was used during Alarcon-Chavez' sentencing hearing. The interpreter testified that he asked Alarcon-Chavez whether he understood him, and Alarcon-Chavez responded affirmatively.

The district court resolved this claim on the merits by finding that Alarcon-Chavez had failed to prove he could not understand the interpreter. We find no clear error in the district court's findings, but we affirm on this issue for a different reason: We conclude this postconviction claim is procedurally barred.

[21,22] When the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm.[35] A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal.[36]

Alarcon-Chavez was aware of any difficulty understanding the interpreter at the time of his direct appeal and could have raised this issue on direct appeal, but did not. Nor, in this postconviction action, has Alarcon-Chavez asserted this claim as one of ineffective assistance of counsel. His claim that he had trouble understanding one of the interpreters is procedurally barred, and this assignment of error is meritless.

## V. CONCLUSION

For all of the foregoing reasons, we conclude the district court did not err in denying Alarcon-Chavez' fourth amended motion for postconviction relief.

AFFIRMED.

---

[35] *Luet, Inc. v. City of Omaha*, 247 Neb. 831, 530 N.W.2d 633 (1995).

[36] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).