IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ST. LOUIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JARED A. ST. LOUIS, APPELLANT.

Filed January 9, 2018.    No. A-17-044.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Sean M. Conway, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Jared A. St. Louis pled no contest to and was convicted of leaving the scene of an accident causing serious bodily injury, a Class III felony, and driving under the influence (DUI). On direct appeal, this court affirmed his convictions and sentences. See *State v. St. Louis*, No. A-15-466, 2015 WL 5813388 (Neb. App. Oct. 6, 2015) (selected for posting to court website). St. Louis then filed a motion for postconviction relief in the district court for Lancaster County. Following an evidentiary hearing, the court denied St. Louis' motion. Finding no error, we affirm.

## BACKGROUND

*Plea and Conviction.*

The charges in this case arose from an incident on October 1, 2014, in which St. Louis, who was driving a pickup truck, struck and injured a bicyclist. St. Louis was originally charged

with leaving the scene of an accident causing serious bodily injury and DUI causing serious bodily injury. At that time, leaving the scene of an accident resulting in serious bodily injury was a Class III felony, punishable by 1 to 20 years' imprisonment and/or a $25,000 fine, and required revocation of the offender's operator's license for a period of 60 days to 15 years. Neb. Rev. Stat. §§ 60-697 and 60-6,198(1)(b) (Cum. Supp. 2016) and 28-105 (Cum. Supp. 2014). DUI causing serious bodily injury was a Class IIIA felony, punishable by 0 to 5 years' imprisonment and/or a $10,000 fine. §§ 60-6,198 and 28-105.

St. Louis subsequently pled no contest to an amended information, charging him with leaving the scene of an accident causing serious bodily injury and first offense DUI. In addition to reducing St. Louis' DUI charge from DUI causing serious bodily injury, a Class IIIA felony, to a non-aggravated DUI, a Class W misdemeanor, the State also agreed to file no additional charges against St. Louis in connection with this incident in exchange for his pleas. Neb. Rev. Stat. § 60-6,196 (Reissue 2010). At that time, Class W misdemeanors were punishable by 7 to 60 days' imprisonment and a $500 fine, and a first offense DUI conviction also required revocation of the offender's operator's license for a period of 6 months. Neb. Rev. Stat. §§ 28-106 and 60-6,197.03(1) (Cum. Supp. 2014).

According to the factual basis for St. Louis' pleas, as set forth in our memorandum opinion on direct appeal:

[O]n October 1, 2014 at approximately 7:12 a.m., police officers were dispatched to a hit and run accident that had occurred at an intersection in Lincoln, Nebraska. The initial investigation showed that a pickup truck struck an 11-year-old boy who was riding his bicycle in the crosswalk at the intersection. The driver, later identified as St. Louis, fled the scene without stopping to determine the identity of the individual he struck, offering assistance, or providing contact information. The victim suffered serious bodily injury and was transported to the hospital for treatment. Officers later learned that the victim had suffered a subdural hemorrhage, fractured ribs, a punctured lung, a fractured pelvis, and multiple abrasions and contusions. The victim required extended hospitalization for his injuries.

A witness at the scene told police that he had observed the front of the pickup strike the victim, who was thrown into the air and landed on a median. He estimated that the pickup had accelerated through a red traffic signal between 40 and 50 m.p.h.

Another witness, who was driving in the same direction as the victim, heard "a loud vehicle accelerating" and observed the pickup strike the victim. The witness followed the pickup to a residence, later determined to be St. Louis' residence, and observed the driver exit the pickup on crutches. Two officers responded to the residence and made contact with this witness.

One of the officers inspected St. Louis' truck at the residence and found a bicycle stuck underneath it. The officers made contact with St. Louis, who exited the residence using crutches. The officers observed that St. Louis had a strong odor of alcohol about his person; watery, bloodshot eyes; slurred speech; difficulty with manual dexterity; and difficulty answering even basic questions. St. Louis admitted to consuming alcohol, but he initially denied involvement in an accident and told the officers he had been at home for 3

to 4 hours. Officers brought St. Louis to the front of the residence where the witness who had followed the pickup from the accident scene identified him as the driver of the pickup and the person responsible for hitting the victim.

St. Louis was transported to the hospital where a legal blood draw was performed, which showed that St. Louis' blood alcohol concentration was .198 grams of alcohol per 100 milliliters of blood. The officers determined that St. Louis was under the influence of alcohol and was unable to safely operate a motor vehicle.

*State v. St. Louis, supra*, 2015 WL 5813388 at *1-2.

At the plea hearing, the district court explained and St. Louis indicated his understanding of his constitutional rights, the consequences of pleading no contest, the nature of the charges, and the possible penalties. After the State provided the factual basis, the district court inquired and St. Louis affirmed that his attorney had explained the charges, that he had had an adequate amount of time to discuss the case with his attorney, and that he had discussed all of the facts and possible consequences with his attorney, including all possible defenses. St. Louis also affirmed that he had told his attorney everything he knew about the case and that he believed his attorney was competently representing him. Both St. Louis and his attorney affirmed their understanding of the plea agreement as recited by the prosecutor. St. Louis also denied having been forced or coerced to enter his pleas or having been promised a particular sentence. He affirmed that he was entering his pleas freely, voluntarily, knowingly, and intelligently. The court then accepted St. Louis' pleas and found him guilty of both counts of the amended information.

For leaving the scene of an accident conviction, the district court sentenced St. Louis to 8 to 12 years' imprisonment and suspended his driving privileges and revoked his operator's license for 15 years. And, for the DUI conviction, the court sentenced him to imprisonment for a period of 60 to 60 days, suspended his driving privileges and revoked his operator's license for 6 months, and imposed a $500 fine. The court ordered that St. Louis' sentences run consecutively.

*Direct Appeal.*

On direct appeal, represented by new appellate counsel, St. Louis alleged that (1) he received ineffective assistance of trial counsel and (2) the district court imposed excessive sentences. With respect to ineffective assistance of trial counsel, St. Louis specifically argued that his pleas were invalid because his trial counsel failed to adequately investigate and pursue a defense of lack of knowledge on the charge of leaving the scene of an accident. He also argued that his attorney incorrectly advised him that he would receive significantly less prison time if he pled no contest and that his attorney's errors, in the aggregate, warranted reversal of his convictions. See *State v. St. Louis*, No. A-15-466, 2015 WL 5813388 (Neb. App. Oct. 6, 2015) (selected for posting to court website). This court rejected St. Louis' excessive sentence claim as well as his claim relating to his trial counsel's advice that he would receive a lesser sentence. However, we concluded that the record was insufficient to address the claim that his trial counsel was ineffective for failing to adequately investigate and pursue a defense of lack of knowledge on the charge of leaving the scene of an accident. See *State v. St. Louis, supra*.

*Postconviction Proceedings.*

On April 7, 2016, St. Louis filed a motion for postconviction relief in the district court, asserting that his trial counsel was ineffective for failing to investigate and pursue a defense of lack of knowledge to the leaving the scene of an accident charge. Specifically, St. Louis alleged that he informed his attorney that he had no knowledge he had struck or injured anyone until after his arrest, that a witness' statements to police showed that St. Louis did not know he had been in an accident, that St. Louis informed his attorney that his roommate could corroborate his lack of knowledge about the accident, and that his attorney was provided with crash retrieval data from St. Louis' vehicle and video surveillance of the intersection where the accident occurred, all of which could have corroborated St. Louis' claim. St. Louis asserted that his trial counsel did not investigate this information, obtain statements from any witnesses, or consult an expert in the field of accident reconstruction, although this information "could have resulted in a credible defense to the charge of Leaving the Scene of a Personal Injury Accident if the matter was pursued at trial." St. Louis alleged that if his trial counsel had adequately investigated, he would have discovered that St. Louis had a valid defense and St. Louis would have insisted on going to trial rather than pleading no contest.

The district court granted St. Louis' request for an evidentiary hearing, and at the hearing, the court received the following exhibits: a certified copy of the "JUSTICE Register of Actions" and judge's notes from the underlying criminal action; the bill of exceptions from the plea and sentencing hearings; depositions from St. Louis and his trial counsel; a packet of the police reports regarding the underlying criminal case; and a copy of video surveillance of the intersection where the accident occurred.

In addition to showing the information reflected in the factual basis provided at the plea hearing and identifying various witnesses spoken to by police, the police reports received at the postconviction evidentiary hearing showed that before the accident, St. Louis was driving and was "yelling out the window [of his pickup] and had his head out the window." According to a witness, after hitting the victim, who was thrown like a "rag doll" off the vehicle, St. Louis did not stop, and sparks were seen "coming from the vehicle" as the victim's bicycle was stuck underneath.

Another witness, the one who followed St. Louis from the scene, told police that St. Louis "attempted to lo[]se him" while driving through a residential area. The witness followed St. Louis until his pickup stopped at a particular residential address, and the witness observed St. Louis exit the pickup. The witness remained at the location until police arrived. Contrary to St. Louis' assertions in his brief on appeal, the police records received into evidence do not reflect that this witness approached and accosted St. Louis about having been in an accident.

Police who arrived at St. Louis' residence shortly after that witness observed significant damage to the front of St. Louis' pickup. When an officer knocked on the door of the residence, St. Louis' roommate answered. The roommate indicated that his roommate, St. Louis, had just arrived home in the pickup parked in the driveway. The roommate reported that he woke up when he heard noises in the residence around 7:15 a.m. and he observed St. Louis in the residence at that time. According to the roommate, it was about 5 minutes from the time he observed St. Louis until the time the officer knocked on the door.

The roommate retrieved St. Louis, who came to the door in only his underwear to speak to the officer. The officer smelled a strong odor of alcohol on St. Louis' breath, and St. Louis' speech was mumbled and slurred. When asked about the accident, his response was "what accident," and he told the officer he had been home for 3 or 4 hours. When the officer told St. Louis that a witness had followed his pickup to the residence, St. Louis did not respond. St. Louis did admit to drinking. The officer placed St. Louis in a police vehicle and retrieved clothes for St. Louis from his roommate. As St. Louis was getting dressed, he said, "I made a major mistake, man." St. Louis was transported to the hospital for a blood draw, during which St. Louis stated, "I sure would have rather went to sleep tonight instead of all this, but what the hell."

In his deposition, St. Louis testified that when his trial counsel asked him what he recalled about the accident, he told him he had no memory of it. As to what he does recall, St. Louis testified to spending time with friends and then drinking at a friend's house until 3 or 4 a.m. on the morning in question. After that, St. Louis has "a blank spot" in his memory up to the point where he vaguely remembers seeing his roommate when he returned home and then going to sleep. The next thing St. Louis remembers is his roommate waking him up when the police arrived. His memory of his arrest and blood draw are vague as well. St. Louis explained his lack of memory as being due to the fact that he was "too intoxicated to remember."

According to St. Louis, he discussed his lack of memory with his trial counsel, but his counsel did not discuss the legal requirements of the charges or potential defenses with him. St. Louis testified that his attorney told him that the case was "cut and dried" and that a plea deal was "the best-case scenario." According to St. Louis, he discussed the possibility with his attorney of retaining an accident reconstruction specialist, something his attorney "mentioned that you could do," but that his attorney "kept telling [him] that [they] didn't need to investigate this matter because [of] the prosecution." St. Louis testified that his attorney never presented a proposed defense, but based on what he now knows, he would "[d]efinitely" have gone to trial in the case "as it was originally filed."

In asserting that he would have gone to trial rather than pleading, St. Louis referenced the "parts of the statements" he had heard from the witness who followed him home "saying that he did not believe that [St. Louis] knew he was in an accident," an assertion he believed would be corroborated by his roommate. St. Louis felt his roommate would have gotten into an argument with him if he "came home and was acting strange." St. Louis was not sure what his roommate would have "added to the arguments" in favor of a lack of knowledge defense, but testified that his attorney could have at least questioned his roommate to find out what he "had thought of the situation" when St. Louis returned to the residence that morning. St. Louis also referenced the "witness statements saying that [he] drove in the same manner after the accident." St. Louis was asked what he thought obtaining an accident reconstructionist might have added to his defense. St. Louis testified:

> Possibly the timing of the lights, the visual if he would have been able to see what was happening. I believe from . . . what I have heard, that it was still dark out when this had happened. If you would have seen the accident happened or -- that's really all I know about it, I guess.

St. Louis testified that although he asked to review police reports or video or audio evidence, his trial counsel never reviewed any police reports with him and told him there was no video of the accident. St. Louis testified that he had heard his trial counsel had statements from the witness who followed St. Louis and from other witnesses of the accident, but that his attorney "only told [St. Louis] parts that would have collaborated [sic] with a prosecution" and that his trial counsel never told him that the witness who followed him "believed [St. Louis] had no knowledge." St. Louis also expressed his understanding that the witness who followed him observed him stop at other traffic lights on the way to his residence but that he was not aware of any such statements prior to entering into a plea agreement. St. Louis was asked about his usual route home and testified that he usually took a circuitous route to avoid traffic congestion on certain streets. St. Louis was aware before pleading that his attorney had received crash retrieval data and video evidence and testified that his attorney told him the "black box" in St. Louis' pickup confirmed that St. Louis accelerated through the traffic light at the accident location. St. Louis testified that if he had been able to review the police reports and video and audio evidence, he would have rejected the proposed plea agreement and would have pursued a lack of knowledge defense at trial.

The deposition testimony of St. Louis' trial counsel was largely consistent with St. Louis' deposition testimony. St. Louis' trial counsel testified that his first discussion with St. Louis "wasn't much of a discussion" because St. Louis told him he did not remember anything about the accident. The attorney noted that St. Louis never deviated, during any of their meetings, from his original statement that he did not remember the morning of the accident.

After reviewing witness statements, police reports, and the other discovery that he was provided, St. Louis' trial counsel concluded that there "probably was no defense." He described the "forensic evidence," which showed that St. Louis was going about 15 miles per hour and then accelerated through a red light until he reached a speed of 40 miles per hour shortly before impact with the victim. St. Louis' trial counsel also described statements from a witness who observed that St. Louis was driving "very, very fast" when he struck the victim and that the bicycle became lodged under St. Louis' pickup. He also described the statement of the witness who followed St. Louis home. St. Louis' trial counsel testified that he felt St. Louis' "attempt to lose [this witness] in the neighborhood" showed consciousness of his guilt. The attorney testified "that was one of several examples of . . . to me . . . overpowering evidence that [St. Louis] knew what he had done and was trying to evade capture or responsibility for it." Another example of consciousness of guilt referenced by the attorney was St. Louis' "very damaging statements" made to police after he was contacted. Besides reviewing the police reports and other items provided by the county attorney's office, St. Louis' trial counsel did not conduct any other independent investigation. Given the facts as he understood them, St. Louis' attorney did not know how an accident reconstructionist "could possibly form an opinion that . . . St. Louis had no knowledge that he'd been in an accident."

St. Louis' trial counsel explained that he does not generally suggest defenses to his clients. In this case, he did not discuss any potential defenses regarding St. Louis' supposed lack of knowledge at any point during his meetings with St. Louis. After he had reviewed the police reports, the attorney explained to St. Louis that he felt the State's case was "very, very good" and gave him what the attorney considered to be "the bad news that this was a case we hoped to plea

bargain and exercise as much damage control as we could." St. Louis' attorney was aware that lack of knowledge that an accident and injury had occurred has been used as a defense to charges of leaving the scene of an accident causing serious bodily injury, but he did not believe that lack of knowledge was a viable defense in this case due to the evidence suggesting consciousness of guilt and the fact that St. Louis did not remember the morning in question. St. Louis' trial counsel also explained that if St. Louis did not remember the morning of the accident, it would not be "a viable alternative" for him to "go into court and claim that he didn't know that he was in an accident."

On December 13, 2016, the district court entered an order, denying St. Louis' motion for postconviction relief. The court determined that although St. Louis identified information that an investigation could have procured, the State's evidence overwhelmingly refuted the contention that the evidence would have been exculpatory. The court noted facts which it concluded "point[ed] to [St. Louis] having knowledge that he was in an accident and had the intent to leave the scene." The court also observed that St. Louis benefitted greatly from his trial counsel's ability to negotiate a plea deal. The court stated, "Contrary to [St. Louis'] assertions there is a reasonable probability that 'but for' his trial counsel's actions, he would have ended up in prison for several more years." Finally, the court noted that St. Louis did not contend he had consulted an expert or accident reconstructionist who had corroborated his theory that such an expert could show he would not have known he hit someone. The court stated that such evidence was "beyond the scope of accident reconstruction expertise as [such experts] cannot speak to what a driver may have felt or known while driving but only [to] how the accident happened and what occurred as a result." Accordingly, the court concluded that St. Louis could not establish that his trial counsel's failure to investigate witnesses on his behalf was prejudicial.

## ASSIGNMENTS OF ERROR

St. Louis asserts that the district court erred in denying his motion for postconviction relief because his trial counsel was ineffective for (1) failing to advise St. Louis that his lack of knowledge that an accident had occurred or that an injury had resulted was a viable defense to the charge of leaving the scene of an accident and (2) failing to conduct additional investigation which would have supported his lack of knowledge defense.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017).

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). An appellate court upholds the trial court's findings in an evidentiary hearing on a motion for postconviction relief unless the findings are clearly erroneous. *Id.* An appellate court independently resolves questions of law. *Id.*

When a claim of ineffective assistance of counsel presents a mixed question of law and fact, an appellate court reviews the lower court's factual findings for clear error but independently determines whether those facts show counsel's performance was deficient and prejudiced the defendant. *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017).

ANALYSIS

Normally, a voluntary guilty plea waives all defenses to a criminal charge. *State v. Lee*, 290 Neb. 601, 861 N.W.2d 393 (2015). However, in a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel.

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* Within the plea context, in order to satisfy the prejudice requirement to establish an ineffective assistance of counsel claim, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). Under the framework of *Strickland v. Washington, supra*, a court may address the two elements, deficient performance and prejudice, in either order. *State v. Ross, supra*.

St. Louis asserts that his trial counsel was ineffective in two respects: (1) failing to advise him of a viable defense to the charge of leaving the scene of an injury accident and (2) failing to investigate witnesses that may have bolstered that defense. We address each argument in turn.

*Failure to Advise of Potential Defense.*

St. Louis argues that his trial counsel was ineffective for failing to advise him that his lack of knowledge that an accident had occurred or that an injury had resulted was a viable defense to the charge of leaving the scene of an accident. He argues further that if his attorney had advised him of this defense, he would have insisted on going to trial rather than pleading no contest.

To establish an ineffective assistance of counsel claim, the viability of the defense is relevant as to how it would have reasonably affected the defendant's decision whether to plead guilty or go to trial. *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011).

Lack of knowledge that an accident and injury occurred is a defense to a charge of leaving the scene of an injury accident, but St. Louis has not demonstrated that it was a viable defense in this case. Section 60-697(1) provides:

> The driver of any vehicle involved in an accident upon either a public highway, private road, or private drive, resulting in injury or death to any person, shall (a) immediately stop such vehicle at the scene of such accident and ascertain the identity of all persons involved, (b) give his or her name and address and the license number of the vehicle and exhibit his or her operator's license to the person struck or the occupants of any vehicle collided with,

and (c) render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary or is requested by the injured person.

Knowledge that an accident has happened and that an injury has been inflicted is an essential element of the crime of leaving the scene of a personal injury accident. *State v. Snell*, 177 Neb. 396, 128 N.W.2d 823 (1964). A driver is not criminally liable when he does not know that an accident has happened or an injury has been inflicted. *State v. Zimmerman*, 19 Neb. App. 451, 810 N.W.2d 167 (2012). Lack of such knowledge constitutes a proper defense. *Id.* It is a question of fact and not of law. *Id.* Knowledge that an accident occurred may be proved by circumstantial evidence, and the fact finder may consider all of the facts and circumstances which are indicative of knowledge. *Id.*

In finding that the facts "point to [St. Louis] having knowledge that he was in an accident and had the intent to leave the scene," the district court relied on evidence, including the fact that St. Louis drove from the scene with the bicycle lodged under his pickup and making sparks, that St. Louis lied about how long he had been home when confronted by police, and that St. Louis told a police officer that he "made a major mistake." The court also noted his conduct of "yelling at other cars" prior to the accident. St. Louis argues that the facts relied on by court had no bearing on his state of mind at the relevant time. He argues that his behavior prior to the accident is not relevant and that his responses to police were given after he had already been told he was in an accident. St. Louis argues that facts more probative of his state of mind are his driving behavior after the accident and his initial reaction to being told he was in an accident. St. Louis relies on the fact that, although the witness who followed him felt his route was evasive, he returned to his own residence and parked in his driveway, rather than going somewhere else or concealing the pickup in the garage. Also, St. Louis again references statements by the witness who followed him home about both his driving behavior after the accident and an encounter with the witness. These statements, however, are not found in the record at the point referenced by St. Louis. It is incumbent upon an appellant to supply a record which supports his or her appeal. *State v. Williams*, 24 Neb. App. 920, 901 N.W.2d 334 (2017). At least, however, with respect to St. Louis' post-accident driving behavior, he expressed his understanding in his deposition that the witness who followed him observed him stop at other traffic lights on the way to his residence. And, the record does reflect St. Louis' responses to the police officer who first contacted him and informed him of the accident.

Many of the facts relied on by St. Louis are just as indicative of consciousness of guilt as they are of lack of knowledge. Evidence of his careful driving behavior could just as easily indicate an intent to avoid notice after the accident. Given St. Louis' alcohol induced lack of memory, there was only circumstantial evidence to show what he knew or did not know about what happened at the time. The record shows that there was significant damage to the front of the pickup, that the victim was thrown into the air from the impact, and that the bicycle lodged under the pickup, leaving sparks, and depositing debris along St. Louis' route home. The district court considered the facts and circumstances indicative of knowledge. Its factual findings about the viability of this

defense are not clearly erroneous. St. Louis has not shown that his counsel was deficient for failing to advise him of this defense.

In a claim for ineffective assistance of counsel, the likelihood of the defense's success should be considered with other factors such as the likely penalties the defendant would face if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011). Self-serving declarations that a defendant would have gone to trial are not enough to warrant a hearing; a defendant must present objective evidence showing a reasonable probability that he or she would have insisted on going to trial. *State v. Barrera-Garrido*, 296 Neb. 647, 895 N.W.2d 661 (2017).

St. Louis argues that he would have insisted on going to trial if his trial counsel had informed of the lack of knowledge defense, regardless of the nature of the plea bargain offered to him and the potential penalties he faced. He argues that while he did benefit from the plea bargain, the only reduction to the potential penalties was to the less serious offense of DUI. He argues that had he known a defense to the more serious offense of leaving the scene of an injury accident existed, he would have insisted on going to trial because the plea bargain did not lessen the potential penalties faced on that charge. He notes his deposition testimony that he would have "[d]efinitely" insisted on going to trial if his attorney had informed him of the lack of knowledge defense. However, the State had a strong case and, as discussed above, St. Louis has not demonstrated the likelihood of the success of a lack of knowledge defense. And, although the plea bargain did not affect the leaving the scene charge, St. Louis did benefit in the reduction of the DUI charge to a Class W misdemeanor and thus an overall reduction in possible penalties. He has not demonstrated that he was prejudiced by any failure of his trial counsel to advise him of a lack of knowledge defense. The district court did not err in denying St. Louis' motion for postconviction relief in this regard.

*Failure to Investigate Potential Defense.*

St. Louis asserts that the district court erred in denying his motion for postconviction relief because his trial counsel was ineffective for failing to conduct additional investigation which would have supported his lack of knowledge defense. Specifically, he argues that his counsel failed to investigate his roommate as a potential witness and failed to obtain an accident reconstructionist. He argues that if his attorney had conducted an investigation and revealed additional evidence to support his defense, he would have insisted on going to trial rather than pleading no contest.

The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. *Id.*

St. Louis notes that his roommate saw him shortly after he came home and just prior to when he was contacted by the police. He argues that if his attorney had investigated further, he could have procured additional testimony from the roommate regarding St. Louis' normal behavior

which "would have supported that St. Louis did not know he had been in an injury accident." Brief for appellant at 19. He also argues that his trial counsel failed to hire an accident reconstructionist who "could have analyzed the data from the accident scene and given an opinion on St. Louis' driving." *Id.* He argues that such an expert could have supported the fact that St. Louis drove normally after the accident. As noted above, however, "normal driving" after the accident could just as easily support consciousness of guilt and a desire to avoid further attention while leaving the scene.

St. Louis does not indicate what such an expert would have added to the forensic evidence already in the record. Data retrieved from St. Louis' pickup shows that he sped through the red light at the intersection where the accident occurred. The surveillance data does not show the accident itself, but again reflects that St. Louis ran the red light. Despite having been granted an evidentiary hearing, St. Louis provided no evidence as to what testimony would have been provided by either his roommate or an accident reconstruction expert if they had been called as witnesses at trial. His attorney made reasonable decisions about what particular investigations were necessary. St. Louis has not demonstrated that his trial counsel was ineffective for failing to conduct additional investigation to support his lack of knowledge defense. St. Louis himself has no memory of the morning in question and regardless of what information might have been obtained from further investigation, neither an accident reconstruction expert nor St. Louis' roommate could conclusively establish whether St. Louis knew an accident had occurred and that someone had been injured. The district court did not err in denying St. Louis' motion for postconviction relief in this regard.

## CONCLUSION

The district court did not err in denying St. Louis' motion for postconviction relief.

AFFIRMED.