IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ARON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTOPHER ARON, APPELLANT.

Filed December 26, 2017.    No. A-16-777.

Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Affirmed.

Jim K. McGough, of McGough Law, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Christopher Aron was convicted of robbery, first degree assault, and two counts of use of a deadly weapon to commit a felony. On direct appeal, this court affirmed his convictions and sentences. See *State v. Aron*, No. A-06-209, 2007 WL 1816292 (Neb. App. June 26, 2007) (not designated for permanent publication). Aron then filed a motion for postconviction relief in the district court for Douglas County. Following an evidentiary hearing, the court denied Aron's motion. Finding no error, we affirm.

## BACKGROUND

The criminal charges in this case arose out of the robbery, during the nighttime hours between February 28 and March 1, 2005, of a jitney driver named Clarissa Teal. Teal was shot and seriously injured during the robbery. On April 7, the State filed an information in the district court, alleging that Aron participated in the robbery and charging him with attempted first degree murder

- 1 -

and use of a deadly weapon to commit a felony. The State filed an amended information on October 28, charging Aron with robbery, first degree assault, and two counts of use of a deadly weapon to commit a felony.

A jury trial was held from November 2 through 8, 2005. Teal testified that at approximately 1 a.m. on March 1, she responded to a call to the jitney service requesting transportation. Teal picked up three men, whose directions led her to a dead end. According to Teal, one of the men then pulled out a gun and demanded money. After Teal threw her money into the back seat, the other two men hit her. The men pushed Teal out of the car, which rolled over her leg as the men began to drive away. Teal jumped on the hood of the car and climbed onto the roof. According to Teal, the men were driving fast and started shooting through the roof. Eventually, the car slowed, and one of the men got out and shot Teal twice. Teal then fell off the car. She was subsequently hospitalized and underwent surgery for her injuries. See *State v. Aron, supra*.

Terrance Moore, a codefendant, testified about his participation in the robbery. According to Moore, it was Aron's idea to rob a jitney driver. Moore testified that Aron was in the car during the robbery and that although Aron hit Teal, he was not the shooter. Moore testified, however, that Aron possessed, assembled, and began to load a shotgun during the robbery and that Aron threatened to kill Teal. During his testimony, Moore acknowledged his plea agreement with the State, pursuant to which he would be charged in juvenile court rather than district court in exchange for his testimony. See *State v. Aron, supra*. According to Moore, Michael Mesadieu was the third man involved in the robbery. Mesadieu did not give a statement to police and did not testify at trial.

Police showed Teal photographic lineups of the alleged suspects, and she identified Moore as a participant in the robbery. When shown a lineup that included Mesadieu, Teal identified photos of Mesadieu and one other individual as possibly being the second participant. Teal was unable to pick Aron out of the lineup that included his photo.

Teal was asked about the outer clothing worn by the men during the robbery, and she testified that they had on fur hoods. She was shown a coat with a fur-lined hood recovered by police from the house where Teal picked the men up, and she testified that it resembled the jacket worn by one or more of the men. Moore's sister testified that Aron, Moore, and Mesadieu, whom she knew by a different name, were at her home on the night of the robbery and that Aron was wearing a black coat with fur on the hood. According to Moore's sister, the coat belonged to Moore. She identified the coat recovered by police as being the coat worn by Aron that night. A police officer observed Aron wearing the coat in question the afternoon after the robbery. Aron denied ever wearing the coat.

The jury found Aron guilty of all four counts of the amended information, and the district court sentenced Aron to terms of 8 to 10 years' imprisonment for each count to be served consecutively. Following Aron's direct appeal, this court affirmed his convictions and sentences. See *State v. Aron, supra*. Aron was represented by the same attorney both at trial and on direct appeal.

On October 5, 2007, Aron filed a pro se motion for postconviction relief in the district court, alleging that he received ineffective assistance of trial and appellate counsel. On September 17, 2010, Aron, through his new postconviction counsel, filed an amended motion for

postconviction relief. In his amended motion Aron alleged that his trial and appellate counsel was ineffective in various regards.

On March 14, 2013, an evidentiary hearing was held before the district court. The court received depositions of both Aron and his trial counsel, a copy of the bill of exceptions from trial, and a transcription of a police interview of Aron. We have set forth certain relevant details from the trial bill of exceptions above. Other relevant details of the evidence received at the postconviction evidentiary hearing are discussed as necessary in the analysis section below.

On July 15, 2016, the district court entered an order denying Aron's motion for postconviction relief. The court addressed Aron's individual claims of ineffective assistance of trial counsel and found Aron did not meet his burden of establishing prejudice. The court found that even if Aron's trial counsel had been deficient in any of the ways alleged, the result of the case would not have been any different "in light of the evidence, including testimony from [Moore]." The court also rejected Aron's claim that his appellate counsel was ineffective for failing to file a petition for further review following Aron's direct appeal because the constitutional right to counsel does not extend to subsequent discretionary appellate review such as petitions for further review.

## ASSIGNMENTS OF ERROR

Aron asserts that the district court erred in denying his motion for postconviction relief and concluding he did not establish that he was prejudiced by ineffective assistance of counsel.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Amaya*, 298 Neb. 70, 902 N.W.2d 675 (2017).

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). An appellate court upholds the trial court's findings in an evidentiary hearing on a motion for postconviction relief unless the findings are clearly erroneous. *Id.* An appellate court independently resolves questions of law. *Id.*

When a claim of ineffective assistance of counsel presents a mixed question of law and fact, an appellate court reviews the lower court's factual findings for clear error but independently determines whether those facts show counsel's performance was deficient and prejudiced the defendant. *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017).

## ANALYSIS

Postconviction relief is a very narrow category of relief available only to remedy prejudicial constitutional violations. *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017). A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *Id.* When a defendant is represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *Id.*

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Ross, supra*. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). Under the framework of *Strickland v. Washington, supra*, a court may address the two elements, deficient performance and prejudice, in either order. *State v. Ross, supra*.

Aron asserts that the district court erred in denying his motion for postconviction relief and concluding that he did not establish that he was prejudiced by ineffective assistance of counsel. Specifically, he argues that his counsel was deficient in failing to object to all of the prejudicial comments made by the prosecutor during the State's closing argument and that he was prejudiced when his counsel improperly "opened the door" to previously excluded evidence; failed to adequately address the issue of recorded jailhouse phone calls at trial; failed to investigate and present evidence that would have supported his alibi; and failed to adequately explain the concept of aiding and abetting prior to trial. He also argues that he was prejudiced by his counsel's failure to file or perfect a petition for further review to the Nebraska Supreme Court. We address each of his arguments in turn.

*Failure to Object to Prejudicial Comments.*

Aron argues that the prosecutor made numerous inappropriate comments during closing argument and that while his trial attorney objected to some of the comments, his attorney failed to object to the most egregious statements, which prejudiced Aron. In his deposition, Aron's attorney testified that he objected to some but not all of the statements because he did not want to object too much and "run the risk of not winning on" certain other arguments. He testified further that he made a judgment call with respect to his objections during closing argument. In denying this claim in Aron's motion for postconviction relief, the district court noted this testimony from Aron's attorney, found that the State's arguments were not improper, and determined that even if they were improper, they did not prejudice Aron "in light of the totality of the evidence and closing argument."

Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. *State v. Mitchell*, 294 Neb. 832, 884 N.W.2d 730 (2016). In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction. *Id.*

The limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016). Language must be reviewed in its entire context to determine whether the prosecutor was expressing a personal opinion or merely submitting to the jury a conclusion that the prosecutor is arguing can be drawn from the evidence. *Id.* Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. *Id.* Hyperbole in closing arguments is hardly rare, and juries should be given credit for the ability to filter out oratorical flourishes. *Id.*

Aron first complains of the prosecutor's statement during rebuttal closing argument that certain arguments made by Aron's attorney during his closing were "ridiculous and insulting." More specifically, the prosecutor stated:

> Now, defense counsel suggested, which I found extremely insulting, that we planted things in [Moore's] mind about what to say and [his sister's] mind on what to say. If you really think, ladies and gentlemen, that [cocounsel] and myself told these witnesses what to say, put our reputation, our occupation as officers of the court on the line just to get this guy, then walk him. That's ridiculous and insulting and defense counsel knows it.

Aron's attorney objected to these comments, and the district court told the prosecutor to "[m]ove on." As noted by the State, these comments were made in response to suggestions by Aron's attorney in his argument that the version of events testified to by these 2 witnesses at trial was influenced by "talk[ing] to the prosecution."

Next, Aron argues that the State, in its rebuttal, improperly asked the jury to speculate as to why Mesadieu was not called as a witness. Specifically, the prosecutor stated:

> The other thing defense counsel suggested to you is why [Mesadieu] wasn't here and why you didn't hear from him. Again, improper argument. [Mesadieu] is a charged defendant in this case. He was the shooter. Why do you think he's not here to testify? He's the shooter in this case.

The district court overruled Aron's objections to this statement, indicating that the prosecutor "has an opportunity to respond." As with the previous comments complained of by Aron, they were made in response to Aron's closing argument in which his attorney made numerous references to the lack of any testimony from Mesadieu and invited the jury to speculate as to why there was no such testimony.

Aron notes a third rebuttal statement made by the prosecutor, which was objected to by his trial attorney. In that comment, the prosecutor observed that the jury was not required to acquit if the victim was unable to identify the defendant. The prosecutor stated further that if Teal had identified Aron as a participant, his attorney would have argued, "You can't trust eyewitness testimony look at all the studies that have been done." The district court overruled Aron's objection that this statement was argumentative. Aron cannot show that his trial attorney performed deficiently as he objected to this and the above noted statements.

Aron also complains, however, of certain statements made by the prosecutor to which his attorney did not object. First, he notes the prosecutor's comment in rebuttal that Aron's arguments

about the owner of the coat worn by the third suspect were "ridiculous" and meant "nothing." Specifically, the prosecutor stated:

> What matters was who was wearing [the coat] at the time. And we know who was wearing it. This guy (pointing). Do we think it's just a series of coincidences that he was placed in the coat before it happened, he was placed in the coat when it happened and he was placed in the coat after it happened? And then he's talking about the coat in the jail tapes, about crack cocaine? And what, lo and behold, do they find in the coat? Crack cocaine. And we can't tie him to that [coat]? Oh, but it's a crappy investigation because the officer didn't know who owned the jacket. That's ridiculous. That means nothing.

We see nothing impermissible in this spirited summation of the evidence. When a prosecutor's comments rest on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. *State v. Mitchell*, 294 Neb. 832, 884 N.W.2d 730 (2016). These types of comments are a major purpose of summation, and they are distinguishable from attacking a defense counsel's personal character or stating a personal opinion about the character of a defendant or witness. *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015). A distinction exists between arguing that a defense strategy is intended to distract jurors from what the evidence shows, which is not misconduct, and arguing that a defense counsel is deceitful, which is misconduct. *Id.*

Second, Aron notes that the prosecutor stated in rebuttal argument, "I don't really know what the defense is." Aron's attorney did not object to this statement which was made in the context of the prosecutor's argument that "an alibi certainly wasn't shown." Again, the prosecutor was commenting on the trial evidence, and in not objecting, Aron's attorney certainly made a reasonable strategic decision to not draw attention to an argument pointing out weaknesses in Aron's alibi defense.

Third, Aron argues that his trial attorney should have objected to a comment by the prosecutor stating that one of the defense witnesses "directly lied," stating that another witness lied about having made a particular phone call, and concluding by telling the jury that "it goes to show the defense puts on witnesses who lie." A review of these statements in context shows that the prosecutor was comparing the testimony of these 2 witnesses to other evidence refuting their testimony. In other words, the prosecutor was permissibly highlighting the relative believability of these witnesses for the State and the defense, rather than attacking the character Aron's attorney or a witness. See, *State v. Nolan, supra*; *State v. Mitchell, supra*.

Finally, Aron argues that his trial attorney should have objected to the prosecutor calling him a liar. Specifically, the prosecutor stated:

> Defense counsel said our entire case rested on [Moore] and that he was our star witness. No, he wasn't. Our star witness was that guy (pointing). Our star witness was [Aron], because he admitted to being there. You heard it. I went over it with him. Where do you think the motivation for [Aron] to lie would come from? When he was talking to his girlfriend and dad on the phone? Believing that we probably wouldn't listen to those tapes? Or when he's sitting up here on the stand testifying? Or when he's talking to officers about this incident? That's when he was lying. He lied on the stand. He tried to tell all of you and

- 6 -

convince all of you that the reason why he said some of the things that he did was because he was just explaining . . . what had been told to him, what he had learned about this crime. Does that make sense to you?

In rebuttal closing argument, the prosecutor discussed Aron's testimony at trial that he was not the third participant in the crime, contrasting that testimony with statements Aron made in recorded jailhouse telephone calls. The prosecutor noted that some of Aron's statements in those calls suggest firsthand knowledge of the crime, and the prosecutor contrasted that evidence with Aron's trial testimony that he only learned those details from news reports and from information provided to him in police interviews. The prosecutor went on to note that Aron never stated during the calls that he had learned these details of the crime from the police or news media, and the prosecutor noted testimony from other witnesses rebutting Aron's claims that he learned certain information from outside sources.

Again, the State was commenting on the evidence and the reasonable inferences that could be drawn from it. Even if these remarks by the prosecutor were improper, Aron has not shown that he was prejudiced by his trial attorney's failure to object to them. There was testimony connecting him to a coat matching the description of the coat which Teal testified was worn by a participant in the robbery, and Moore directly identified Aron as being the third participant. Aron gave information in telephone calls from which one could conclude he was a participant. Even if his attorney was deficient for failing to object to these comments, Aron cannot demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

The district court did not err in denying Aron's postconviction motion on the basis of his trial attorney's failure to object to the prosecutor's comments complained of by Aron in his brief on appeal.

*Opening Door to Previously Excluded Evidence.*

As noted above, the coat belonging to Moore, and which Moore testified that Aron wore during the robbery, was recovered during the police investigation of this case. Aron was heard in a recorded jailhouse telephone call making reference to the police having "missed some drugs that were . . . in the coat." After listening to the phone call and learning this information, police searched the coat and located "a little over a gram of crack cocaine." Prior to trial, the district had excluded evidence regarding the drugs found in the coat pursuant to Aron's motion in limine; however, at trial, the court overruled Aron's objection and found that his attorney had opened the door to the evidence based upon questions asked during cross-examination of a police officer witness. Accordingly, the court allowed the prosecutor to elicit testimony that the drugs were found in the coat as a result of the police listening to statements made by Aron in a recorded phone call. Aron argues counsel was ineffective for opening the door to this previously excluded evidence, which he asserts "provided a strong link" between him and the coat believed to have been worn by one of the suspects, and that this also allowed the jury to consider other bad acts evidence, i.e. possession of crack cocaine, which would have not been presented to the jury otherwise. Brief for appellant at 13.

The district court rejected Aron's argument that his attorney was ineffective for opening door to this evidence. The court determined that even if Aron's attorney was deficient for questioning the police officer in a manner that eventually led to the admission of the previously excluded evidence, Aron cannot show that he was prejudiced. We agree. There was other evidence admitted at trial linking Aron to the coat, including the testimony of Moore who testified Aron wore the coat during the robbery, Moore's sister who testified Aron wore the coat the night of the robbery, and the police officer who testified that Aron was wearing the coat the day after the robbery. Additionally, there was other evidence linking Aron to drugs and drug use. Aron testified at trial that he knew the crack cocaine was in the coat because he told Moore to hide the drugs. He also admitted during his testimony that he had smoked marijuana on the day of his arrest and that smoking marijuana was "a habit" of his. Assuming his attorney was deficient in opening the door to the previously excluded evidence, Aron cannot demonstrate a reasonable probability that but for his attorney's deficient performance the result of the proceeding would have been different. The district court did not err in denying Aron's motion in this regard.

*Failure to Adequately Address Recorded Phone Calls.*

Aron asserts that he was prejudiced by his trial attorney's failure to adequately address the issue of recorded jailhouse telephone calls he made while awaiting trial. Aron argues that the State relied on statements he made in these phone calls to show his knowledge of and involvement in the robbery. Aron claims, however, he learned the details reflected in the phone calls from "press reports and statements made by officers during his interrogation." Brief for appellant at 13. Aron argues that his attorney was deficient for failing to call as witnesses any print or television reporters or to offer into evidence any print or video news accounts to support his assertion that the statements he made in the recorded calls were "the product of insight learned from news accounts." Brief for appellant at 14. Aron acknowledges that his attorney questioned a police officer witness about details provided to Aron during his police interview. Aron argues, however, that his attorney should have obtained a transcript of his videotaped police interrogation, which would have helped "to identify where in the tape certain conversations occurred," allowing for a more effective examination of the police officer and lending "clarity and support to [Aron's] position." Brief for appellant at 16.

At trial, Aron testified that he learned the details of the robbery that he discussed in the telephone calls from his police interview and from media reports. Clearly, the jury was aware of Aron's claims as to the sources of his knowledge and found that his assertions were not credible. Aron repeated his assertions as to the source of his knowledge in his deposition that was admitted at the evidentiary hearing and stated that he provided his attorney with this information. However, Aron did not identify any particular news accounts as being the source of his knowledge of the crime. Aron stated in his deposition that he was unaware of his attorney doing anything to investigate "the news stories that were running at that time." He stated further that he thought his attorney "looked over" the videotape of his police interview, but Aron never saw a transcript of the police interview prior to his postconviction attorney's involvement in the case.

In his deposition, Aron's trial attorney was asked about his efforts to determine "what was out there in those news reports at the time" to support Aron's assertion that he learned about the crime from media reports. Aron's attorney testified that there were "media reports, lots of them,"

but he acknowledged that he did not know exactly what was in all of the news reports. He testified that he had an investigator but that the investigator "didn't come up with any articles." Aron's attorney observed that the media does not always accurately report the details of a crime and that presenting the jury with any such news reports of the jitney robbery might have been unduly prejudicial to Aron. Aron's attorney was also asked whether there was any strategic reason not to have the police interview videotape transcribed. He testified that the videotape could have been cued up at trial if necessary and that he was not certain what having a transcription would have added. He also stated that "a videotape is more compelling than a transcribed copy."

Aron testified at trial that he learned about the crime from news reports. The admission of any such news reports would have been cumulative to Aron's testimony, and as noted above, Aron does not offer examples of the media accounts to which he was allegedly exposed. Nor has he shown that any such accounts would have been admissible at trial. As observed by Aron's trial attorney, any such reports may have been inaccurate or otherwise prejudicial to Aron. Finally, Aron's attorney had access to the videotape of Aron's police interview, and he did not believe that having access to a transcription of the interview would have particularly aided his examination of the police officer who testified about the interview.

The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. *Id.* Aron has not shown that his attorney was ineffective for failing to call any news reporters as witnesses, offer any news reports into evidence, or obtain a transcription of Aron's police interview. The district court did not err in denying Aron's motion for postconviction relief in this regard.

*Failure to Investigate and Present Evidence Supporting Alibi.*

Aron argues that his trial attorney was ineffective for failing to investigate and present evidence that would have supported his alibi and his assertion that he was not the third individual involved in the jitney robbery. Specifically, he argues that his attorney should have investigated the ownership of a black tennis shoe found at the scene and should have explored who else might have had access to the coat Aron allegedly wore during the robbery.

At trial, police officers who investigated the jitney robbery testified that certain personal items, including a tennis shoe, were recovered at the scene. When asked by Aron's attorney whether he knew if any of the personal items recovered belonged to Aron, one of the officers testified that he did not know. In Aron's deposition received at the postconviction evidentiary hearing, he testified that he did not leave a tennis shoe at the scene and that he did not know whose shoe it was. He was not aware of his attorney taking any steps to determine ownership of the shoe. When Aron's attorney was asked about the shoe in his deposition, the attorney did not recall doing anything to identify the shoe's owner. Aron's attorney observed, however, that the presence of the shoe at the scene did not mean that it was related to the case and that technology available at the time might not have allowed him to determine the owner.

In the context of a claim of ineffectiveness of counsel for failure to investigate, allegations are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence that the investigation would have procured and how it would have affected the outcome of the case. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). Aron does not allege what steps his attorney should have taken to identify the owner of the tennis shoe or suggest to whom the shoe might have belonged. Nor does he identify exculpatory evidence, beyond his assertion that he was not there, showing that another particular individual was the third man involved in the robbery. Even if his attorney had found the shoe's owner, that evidence would not preclude Aron being the third suspect. The testimony of his codefendant, Moore, linked him to the robbery as the third perpetrator. Aron cannot demonstrate a reasonable probability that but for his attorney's failure to investigate ownership of the shoe, the result of the proceeding would have been different. The district court did not err in denying Aron's motion in this regard.

Similarly, Aron cannot show that his trial attorney was deficient or that he was prejudiced by his attorney's failure to take "more aggressive steps in determining and demonstrating" that individuals other than Aron had access to the coat allegedly worn by Aron during the robbery. Moore's sister testified that her father had purchased the coat for Moore. Aron's attorney elicited testimony from Moore's father that he had six children living with him and that there was "[a] lot of traffic" in the house when the children's friends visited.

Aron's attorney testified in his deposition about his investigation, stating that he "talked to individuals on the street regarding the fur-lined jacket" and was unable to find anyone else who might have worn it beyond what was demonstrated at trial. He was unable to determine if anyone that lived at Moore's house had "either possessed or worn" the coat, and he testified to his belief that anyone who lived at the house would have been unlikely to testify that someone other than Aron wore the coat during the robbery.

Clearly, there was evidence presented at trial that the coat belonged to Moore, and Aron's attorney brought forth evidence that there were multiple people living in and frequent visitors to Moore's home. Aron does not suggest what further steps his attorney might have taken to explore access to the coat or how that might have supported his assertion that he was not present during the robbery. As noted by the State in its brief, the issue was not who else may have had access to the coat, but who was wearing it during the robbery. Moore's sister testified to seeing Aron wearing the coat the night of robbery, and Moore testified that Aron wore it during the robbery. Further, a police officer testified that Aron was wearing the coat the following day. Even if Aron's attorney was deficient for failing to investigate further, Aron cannot demonstrate a reasonable probability that but for his attorney's failure, the result of the proceeding would have been different. The district court did not err in denying Aron's motion in this regard.

*Failure to Explain Concept of Aiding and Abetting.*

Aron argues that his trial attorney did not adequately explain the concept of aiding and abetting to him prior to trial and that if his attorney had done so, he would have chosen to take a plea. He argues that he "would have been more likely to have accepted [sic] offer to a substantially lower sentence had his attorney taken the time to ensure that he understood his risk at trial." Brief for appellant at 20. Aron was 18 years old at the time he was charged in this case. He argues that

it was his attorney's responsibility to educate an 18-year-old defendant on this issue and that his attorney's failure resulted in him "proceeding to trial and receiving a longer sentence."

In his deposition, Aron was asked if his attorney ever explained to him that under an aiding and abetting theory he could be treated the same as the person who shot the jitney driver. Aron testified that he did not understand that at the time and that his attorney did not do anything to explain it to him. He testified that it was "a possibility" that if his attorney had explained the concept of aiding and abetting to him he "may have considered the plea agreement in this case differently." Aron's assertions are refuted by the record.

Aron's trial attorney testified in his deposition that he discussed with Aron "the pros and cons" of going to trial but that Aron did not want to accept a plea offer that had been made and "insisted he wasn't there," i.e., not a participant in the crime. Aron's rejection of a plea offer is reflected in the trial bill of exceptions, which includes a hearing from October 27, 2005. On that date, after the district court addressed a motion in limine, the prosecutor indicated that based on Aron's rejection of a plea offer, it intended to file an amended information (the amended information described above), which would "substantially increas[e] [Aron's] sentencing exposure." Under the rejected plea offer, if Aron pled to the attempted murder charge in the original information, the State would drop the use of a weapon charge and would also drop a burglary charge in another case.

After the prosecutor outlined the rejected plea agreement and the proposed amended information, the district court explained the "penalty exposure" Aron would be facing if the amended information were filed, including that any sentence on the use of a weapon charges would be imposed consecutively. Aron's attorney then noted "for the record" that he had explained to Aron that "if anyone in that car used a weapon under the aiding and abetting, that [Aron] could conceivably be construed or could conceivably be one of the person's using that weapon." The court provided an additional example of the concept of aiding and abetting and then took a recess to allow Aron's attorney to discuss the matter further with Aron. Following the recess, Aron's attorney affirmed that the case would proceed "with jury selection on Monday." The prosecutor provided the court with the amended information and affirmed that the State would not enter into any further plea negotiations with Aron. The concept of aiding and abetting was further explained to Aron prior to trial during a hearing on October 28, 2005, at which the district court read a proposed jury instruction on aiding and abetting.

The record shows that despite having the concept of aiding and abetting and the risks of going to trial explained to him by both his attorney and the district court, Aron rejected the State's plea offer and decided to go to trial. He cannot show that his attorney's performance was deficient. The court did not err in denying his motion for postconviction relief in this regard.

*Failure to File Petition for Further Review.*

Aron argues that he was prejudiced by his appellate counsel's failure to file or perfect a petition for further review following his direct appeal. This argument is without merit. A defendant does not have a constitutional right to counsel beyond the conclusion of his or her direct appeal, and therefore, he or she cannot be deprived of effective assistance of counsel based on the failure of counsel to timely file a petition for further review. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015). An attorney's failure to petition for further review on an issue cannot be grounds for

postconviction relief, in that the right to counsel does not extend to discretionary appeals to a state's highest court. *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016). The district court did not err in denying Aron's motion in this regard.

CONCLUSION

The district court did not err in denying Aron's motion for postconviction relief.

AFFIRMED.