IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. CASTILLAS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID CASTILLAS, APPELLANT.

Filed June 8, 2021.    No. A-20-705.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Joshua W. Weir, of Black & Weir Law Offices, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

INTRODUCTION

David Castillas appeals from the order of the district court for Douglas County, denying his motion seeking postconviction relief following an evidentiary hearing. In that motion, Castillas alleged that his trial counsel was ineffective in relaying and providing reasonable advice regarding the plea offer presented by the State. We affirm.

STATEMENT OF FACTS

*Charges and Trial.*

The charges against Castillas arose out of two driveby shootings at two different residential locations in Omaha, Nebraska, in June 2010. Bullets damaged the residence at one of the locations; at the other location, a bullet struck the arm of one of the residents, causing a nonfatal injury. Castillas and three other individuals were charged in connection with the shootings. Castillas was charged with discharging a firearm at a dwelling (Class ID felony), first degree assault (Class II

- 1 -

felony), and two counts of use of a firearm to commit a felony (Class IC felonies). A subsequent amended information charged Castillas with two counts of discharging a firearm at a dwelling while in or near a motor vehicle (Class IC felonies), second degree assault (Class III felony), and three counts of use of a firearm to commit a felony (Class IC felonies). A second amended information filed on May 4, 2011, the first day of Castillas' trial, removed the allegations that Castillas had acted "recklessly" in connection with the counts of discharging a firearm at a dwelling and the second degree assault count. See *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013), *disapproved on other grounds, State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015).

Following a jury trial in which all three codefendants testified against Castillas, the jury found Castillas guilty on all six charges of the second amended information. The district court sentenced Castillas to consecutive terms of imprisonment for an aggregate sentence of 30 to 80 years' imprisonment, which included a cumulative mandatory minimum of 25 years. See *State v. Castillas, supra*.

*Direct Appeal.*

Castillas, represented by his trial counsel, filed a direct appeal, alleging that (1) the district court erred in allowing testimony at trial concerning whether he possessed firearms after the second shooting, (2) the court erred in admitting photographs of Castillas possessing firearms, (3) the evidence at trial was insufficient, (4) the court erred in overruling Castillas' motion to dismiss at the end of the State's case, (5) the court erred in giving a jury instruction with regard to voluntary flight, and (6) the court erred in ordering a sentence that was substantially different from its intended sentence. The Nebraska Supreme Court rejected Castillas' claims and affirmed the judgments of conviction and sentences imposed. See *id.*

*Postconviction Proceeding.*

Castillas filed a timely verified motion for postconviction relief, alleging that his trial counsel was ineffective in relaying and providing reasonable advice with regard to the State's plea offers. He alleged that his convictions should be vacated and he should be allowed to reconsider and accept one of the State's plea offers. Specifically, Castillas alleged that the State made two plea offers in this case, both of which would have been more favorable than going to trial on the six charges in the second amended information. According to Castillas, the first offer, extended after the filing of the original information, allegedly would have dismissed Count III (first degree assault) in exchange for his pleas to the other three charges. He claimed that the second offer, extended about a week before trial and prior to the filing of either amended information, would have allowed him to plead to four charges (but with Count III reduced from first degree to second degree assault). Castillas alleged both plea offers included a provision that if he insisted on going to trial, the State would amend the information to add two additional counts. In his motion, Castillas alleged that he rejected the State's plea offers because his trial counsel advised him that the first offer was "'not even close to a deal'" and the second offer was "'still not a good deal'" based on the mandatory minimum sentences for the charges to which he would be pleading. Castillas alleged that his trial counsel communicated that there would be no case against him if his codefendants were discredited, that his trial counsel "felt really confident" he could discredit their testimony, and that his counsel estimated a "50/50" chance the jury would believe the

codefendants. Castillas alleged that he would have accepted the State's first plea offer if his trial counsel had not "understated the risks and overstated the prospects of prevailing at trial" and that this would have resulted in more favorable sentences than those actually imposed.

An evidentiary hearing was held on Castillas' postconviction motion. At the hearing, the district court received an application for attorney fees filed by Castillas' trial counsel, depositions of Castillas and his trial counsel, and an affidavit of the lead prosecutor who handled the case.

In her affidavit, the prosecutor noted that Castillas was represented by another attorney before his trial attorney was appointed. She stated her understanding, based on conversations with both attorneys that Castillas "always wanted to pursue his right to trial," and she indicated that because Castillas wanted to go to trial, "plea negotiations were never extensive." According to the prosecutor, she advised both attorneys that the State's offer, in exchange for Castillas' pleas to the first three counts of the original information (discharging a firearm, use of a firearm, first degree assault), was to dismiss Count IV (the second use of a firearm charge) and to not add any additional charges, which would have included more charges carrying mandatory minimum sentences. The prosecutor noted that the State waited "until the eve of trial" to file additional charges based on her understanding that Castillas' trial attorney was still trying to convince Castillas to accept the plea offer "in light of the cooperating witnesses who were deposed." She stated that "[u]p until trial," the State would have allowed Castillas to enter a plea to the Counts I-III "as originally offered" and that it would have also reduced the assault charge "to a second degree assault based on the evidence as it came out during discovery," which the State eventually did "[f]or trial strategy purposes" in the second amended information that was filed adding the additional charges. According to the prosecutor, Castillas "would never have received a better offer," given that one of his codefendants who cooperated and testified at Castillas' trial entered a plea to second degree assault and two counts of discharging a firearm at a dwelling.

Castillas' deposition testimony was consistent with the allegations in his postconviction motion. Castillas testified to his understanding that the State had offered to dismiss Count III (the assault charge) if he pled to the other three counts of the original information, and he indicated that his attorney informed him the minimum sentence he was facing was "[a] mandatory 15," although "it could have been a higher sentence." According to Castillas, the attorney told him not to accept the plea offer "because it wasn't even close to a deal." Castillas testified that after the depositions of Castillas' codefendants were taken, his attorney was confident of being able to discredit them as witnesses and that the attorney told him if they were discredited, there would not be a case against Castillas. Castillas testified that the attorney estimated a "50/50" chance that they could discredit the codefendants as witnesses. Castillas testified that the attorney never really discussed the State's plea offer after their first meeting until the end of April 2011 when Castillas was transported for a hearing and was informed that the State was offering to allow him to plead to the original four charges (with Count III being reduced to second degree assault) in exchange for which the State would agree not to add two additional charges. Castillas testified that he was given about 5 minutes in court to consider the second plea offer but that he rejected it because the attorney led him to believe that he "had a strong chance of winning at trial." Castillas denied that the attorney advised him about the strength of the State's case or the actual possible total sentence he was facing if they went to trial. According to Castillas, his attorney simply told him that if he lost at trial he would "come out [of prison as] an old man." Castillas testified that if he had known he

was facing a minimum of 27½ years in prison for the six offenses of which he was convicted at trial, he would have accepted the State's plea offer at the time of the hearing at the end of April 2011. He also testified that he was not aware that the State was contemplating adding two additional counts prior to that April hearing.

Castillas acknowledged that he told the attorney he was innocent and provided his attorney with an alibi at one point, which prompted the attorney to file a notice of alibi with the court. Castillas testified that after reviewing the depositions of his codefendants, he continued to express his innocence to his attorney and to tell the attorney that he wanted to go to trial.

Castillas' trial attorney has been practicing law since 1997, primarily in the areas of criminal and juvenile law. He was appointed to represent Castillas in January 2011, and he met with the prosecution later that month to discuss a potential plea offer. After he was appointed, the attorney met with Castillas. He testified that all of his in-person meetings with Castillas took place at the jail where Castillas was housed. The attorney testified that he also had "substantive discussions" with Castillas over the phone. He was certain that the plea offer was discussed with Castillas both over the phone and in-person. The attorney recalled meeting with Castillas in mid-March 2011, in mid-April, and again just before trial and speaking with Castillas on the phone "in a substantive manner" a couple of times in both March and April. The attorney discussed with Castillas the content of the depositions taken of his codefendants (taken in early February 2011) and had previously presented him with the police reports. He did not recall whether he ever provided Castillas with copies of the depositions, although they discussed the content.

The attorney's recollection of the plea offer relayed to him by the prosecutor at the end of January 2011 was consistent with that set forth in the prosecutor's affidavit (dismissal of the second use of a weapon charge and agreement not to pursue additional charges in exchange for Castillas' pleas to the other three charges). The attorney disagreed with Castillas' assertion that the State's offer had been to dismiss a count other than one of the use of a weapon charges. According to the attorney, there was never a particular time frame for acceptance of the plea other than the limit imposed by the date of the trial itself.

The attorney suggested that Count I of the original information mistakenly identified the first count as being a Class ID felony rather than a Class IC felony as was charged in the amended informations. In her affidavit, the prosecutor also stated that the original information "contains a typo with regard to the felony classification for the Discharging a Firearm at a Dwelling charge." We observe that it is more likely that rather than containing a "typo" as to the felony classification of the first count, the State mistakenly charged Castillas under a different statute than intended. The first count of the original information charged Castillas in Count I under Neb. Rev. Stat. § 28-1212.02 (Reissue 2016), which is a Class ID felony, while the amended informations charged him in Count I and Count V under Neb. Rev. Stat. § 28-1212.04 (Reissue 2016), which is a Class IC felony.

The attorney testified that he relayed the State's plea offer to Castillas "very early" in their conversations after his appointment. The attorney also reviewed police reports and deposition content with Castillas and informed Castillas of the potential consequences of proceeding to trial and the potential results of a plea. The attorney testified that in doing so, he would not have made a specific recommendation to Castillas as to whether the plea offer represented "a good deal," but that he would have explained that the plea offer considerably reduced Castillas' exposure to the

associated mandatory minimum sentences of the original four charges as well as those associated with the potential additional charges. Given the mandatory minimum sentences involved and the strength of the State's case, the attorney felt "this [was] going to be an extremely difficult trial to win." The attorney testified that while he would not have used the term "best interest" in advising Castillas with respect to the plea offer, he advised Castillas that it would be "extremely dangerous" to go to trial and "expressed [his] reservations to [Castillas] multiple times leading up to that trial." The attorney explained that he never "estimate[d] the chances at 50/50 that the jury would believe the three codefendants" because he does not "engage in those types of conversations with my client[s], even if they ask" because he thinks "that it is imprudent and inaccurate to do those things." He also stated that he would never have used the words "that the offer that was made was . . . not even close to a deal" in discussing the plea offer with Castillas.

The attorney estimated that he spent "closing in on three and a half hours" discussing with Castillas the nature of the case, the strength of the evidence, and the merits of taking the plea offer or going to trial. According to the attorney, Castillas was "unequivocal" about his desire to proceed to trial, and the attorney did not remember a time when Castillas indicated a willingness to plead if there was "a little better offer on the table." The attorney explained that he continued to negotiate with the prosecutor and that he had ongoing discussions with Castillas about the plea offer although "it seemed that both [Castillas] and [the prosecutor] were pretty entrenched in their positions and it wasn't going to change a great deal." Despite their ongoing discussions about the benefits of the plea agreement and the strength of the State's case, Castillas continued to consistently express a desire to go to trial. The attorney testified that he had no professional regrets about his representation of Castillas and would not do anything differently if he were to handle the case again.

On August 28, 2020, the district court entered an order denying Castillas' motion for postconviction relief. Initially, the court found that Castillas had failed to prove his allegations with regard to the details of the first plea offer extended to him by the State. The court noted that while Castillas alleged in his motion and deposition testimony that the offer was for the State to dismiss Count III of the original information, dismissing the first degree assault charge would make Count IV, the associated use of a weapon charge void. The court observed that Castillas' assertions as to the details of the first plea offer were inconsistent with those outlined in the prosecutor's affidavit and the deposition of Castillas' trial attorney (that one of the use of a weapon charges would be dismissed in exchange for Castillas' pleas to the other three counts, and that additional charges would not be added). The court also noted the "clerical error" in the original information with respect to the felony classification of Count I (discharging a firearm at a dwelling) and stated that "it is apparent from the testimony and amended information that [Count I] was always intended to be a Class IC felony." The court concluded that while Castillas never established the exact plea offer extended, the court found that the offer was for him to plead to "two Class IC felonies and the assault."

The district court then addressed Castillas' assertions of ineffective assistance of trial counsel and concluded that Castillas failed to show his trial counsel was ineffective with respect to his handling of the plea offers. The court reviewed the evidence and found that the attorney's testimony showed he had spent "'hours' discussing the merits of the plea deal" with Castillas, including the strength of the State's case, but that Castillas consistently expressed his desire to go

to trial. The court specifically found the attorney's testimony "to be simply more credible" than Castillas' testimony. The court noted that Castillas' trial counsel was "an experienced criminal attorney who provided thorough explanations as to the plea offers, his advice and [Castillas'] continued position to reject that offer and proceed to trial."

## ASSIGNMENTS OF ERROR

Castillas asserts, consolidated and restated, that the district court erred in dismissing his motion for postconviction relief and in failing to find that his trial counsel's performance was deficient and that he was prejudiced by his counsel's deficient performance.

## STANDARD OF REVIEW

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Combs*, 308 Neb. 587, 955 N.W.2d 322 (2021). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Combs, supra*. In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021).

## ANALYSIS

Castillas asserts that the district court erred in dismissing his motion for postconviction relief and in failing to find that his trial counsel's performance was deficient and that he was prejudiced by his counsel's deficient performance. He argues on appeal that his trial counsel was ineffective in his advice with regard to the State's plea offers. The right to effective assistance of counsel extends to the negotiation of a plea bargain, and claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). See, *Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Combs, supra*. To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Combs, supra*.

Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* The prejudice inquiry in cases involving plea agreements focuses upon whether counsel's ineffective performance affected the outcome of the plea process. *State v. Hernandez*, 22 Neb. App. 62, 847 N.W.2d 111 (2014). To show prejudice in the context of rejecting a plea offer, a defendant must show that but for the ineffective advice of counsel there is

a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. *Lafler v. Cooper, supra*.

Here, Castillas argues that the evidence reflected his trial counsel's deficient performance because he "failed to provide a candid estimate of the probable outcome [of trial]" and that the district court accordingly should not have dismissed Castillas' motion without a consideration of whether he was prejudiced by his attorney's deficient performance. Brief for appellant at 16. Castillas also argues that his trial counsel performed deficiently because he failed to keep Castillas apprised about the State's plea offer, including the fact that it was available to Castillas all the way up until trial. In support of his arguments, Castillas directs our attention to certain American Bar Association standards, which he asserts are useful guides for evaluating trial counsel's performance. First, Castillas notes the following with respect to advising a criminal defendant about the case:

> (a) After informing himself or herself fully on the facts and the law, defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.

> (b) Defense counsel should not intentionally understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his or her plea.

ABA Standards for Criminal Justice, Advising the Accused, Standard 4-5.1 at 197 (3d ed. 1993). Castillas also directs our attention to a standard with respect to plea discussions, which provides:

> (a) Defense counsel should keep the accused advised of developments arising out of plea discussions conducted with the prosecutor.

> (b) Defense counsel should promptly communicate and explain to the accused all significant plea proposals made by the prosecutor.

ABA Standards for Criminal Justice, Plea Discussions, Standard 4-6.2 at 206 (3d ed. 1993).

As noted by the district court, Castillas' arguments are refuted by his trial attorney's testimony. The attorney's testimony reflects his concern about going to trial in this case in light of the mandatory minimum sentences involved and the strength of the State's evidence based on the anticipated cumulative testimony of the codefendants. The attorney testified that he expressed to Castillas the difficulty of winning the case and the danger of going to trial multiple times during their discussions. He also testified to having ongoing discussions about the plea offer with Castillas throughout the case, but the attorney's testimony reflects that Castillas was consistently adamant in his desire to go to trial. Contrary to Castillas' assertions, the record reflects that his attorney properly advised him with respect to the State's plea offer.

In this case, the district court specifically found the testimony of Castillas' trial attorney to be more credible than Castillas' testimony. We defer to the court's determination in that regard. See *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021) (in evidentiary hearing for postconviction relief, postconviction trial judge, as trier of fact, resolves conflicts in evidence and

questions of fact, including witness credibility and weight to be given witness' testimony). Castillas has not established deficient performance. The court did not err in denying his motion for postconviction relief on that basis.

Given our finding regarding deficient performance, we do not need to address Castillas' arguments with respect to prejudice. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020).

CONCLUSION

The district court did not err in denying Castillas' motion for postconviction relief.

AFFIRMED.